THE ROYAL BANK OF CANADA, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent.

No. 45. Argued May 7, 1945.—Decided November 13, 1945.

Brown, Newson & Córdova, and José L. Hernández for petitioner. Julio Suárez Garriga, Acting Attorney General, and M. Velázquez Flores, Deputy Attorney General, for the intervener Insular Treasurer, respondent in the main proceeding.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

This proceeding was instituted in order to review a decision of the Tax Court of Puerto Rico dismissing a complaint filed by The Royal Bank of Canada against a ruling of the Treasurer of Puerto Rico, rendered on October 20, 1941, denying a certain petition for refund presented by that bank. The facts of this case may be summarized thus:

On February 14, 1941, the bank filed its income tax return covering the period from December 1, 1939, to November 30, 1940, and on the same day it paid the tax on its net income at the rate of 14.375 per cent which was in force at that time for domestic as well as for foreign corporations. But as on April 12, 1941, Act No. 31 of 1941 (Laws of 1941, p. 478) was approved with retroactive effect to January 1, 1940, levying a tax rate of 19 per cent on foreign corporations and 17 per cent on domestic corporations, on July 11, 1941, the Treasurer sent notice to the bank requiring the payment of an additional tax of $6,693.61 based on the increased rate of 19 per cent, the bank being a foreign cor-

poration. On July 21, 1941, the bank paid the Treasurer said amount, but stated that it paid under protest the amount of $2,894.54 which represented the difference between the additional tax of 17 per cent levied on domestic corporations and that of 19 per cent levied on foreign corporations. On August 9, 1941, the bank filed a complaint before the Tax Court praying for the return of the tax which it alleged had been paid under protest. On September 14 following, it filed with the Treasurer a petition for refund of that same amount. As we have already pointed out, this petition was denied by the Treasurer on October 20, 1941, and on November 17, that is, within thirty days after the decision of the Treasurer had been rendered, the bank filed in the Tax Court a new complaint in order to review the Treasurer's decision. The new complaint was amended on February 17, 1942.

On March 2, 1945, the Tax Court rendered its decision dismissing the complaint on the ground that the tax herein had not been paid under protest and consequently that its refund could not be claimed.

██ In *The Coca Cola* v. *Tax Court, ante,* pp. 142, 143, 144, where this same question was raised, we said:

"In his answer the Treasurer alleged that the Tax Court lacked jurisdiction because, even though the taxpayer insisted that it had paid under protest, the payment had to be considered voluntary in pursuance of the ruling established in *Blanco* v. *Tax Court,* 61 P.R.R. 21 (1942). The Treasurer further alleged that the 20% tax levied on foreign corporations was constitutional.

"The Tax Court disclaimed jurisdiction to take cognizance of the case and consequently dismissed the complaint, resting its decision on *Blanco* v. *Tax Court, supra,* wherein it was held that the payment of the tax made under circumstances similar to the ones in the present case, does not constitute a payment under protest, despite the fact that the taxpayer, upon making the same, expressly stated that it paid under protest and it so appears from the tax receipt.

"We agree with the Tax Court that the payment in the present case was voluntarily made, inasmuch as the taxpayer did not make it under compulsion, or threats of attachment or of sale of its

property. *Blanco* v. *Tax Court, supra.* But as we have pointed out, petitioner's claim is based on §§ 64 and 75 of the Income Tax Act [1] and these Sections do not require payment under protest as a condition precedent to a refund of the tax.''

■ It is true that this court, in a line of cases cited in *The Coca Cola Co.* v. *Tax Court, supra;* among them that of *Yabucoa Sugar Co.* v. *Domenech, per curiam* decision, 50 *D.P.R.* 962, affirmed by the Supreme Court of the United States (*Bonet* v. *Yabucoa Sugar Co.,* 306 U. S. 505 (1939)), held that the authority to make refunds conferred by § 75 of the Income Tax Act on the Treasurer was discretionary, and that therefore no appeal could be taken from said decisions; but as we stated in *The Coca Cola Co.* v. *Tax Court, supra:*

''. . . but this rule has been changed by Act No. 169 of May 15, 1943 (Laws of 1943, p. 600), effective since August 13, 1943,[2] § 3 of which provides:

'' 'All actions, remedies, or proceedings which must be substantiated before the Tax Court of Puerto Rico shall be instituted by means of a sworn complaint of the claimant person or entity . . . within the 30· days following the date of the service of notice thereof by the Treasurer of Puerto Rico, in any of the following

''[1] Section 64(*a*) provides in part:

'' 'Where there has been an overpayment of any income or excess-profits tax imposed by this Act. . . or any such Act as amended, the amount of such overpayment shall be credited against any income or express-profits tax or installments theerof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer.'

''And § 75 provides:

'' 'The Treasurer is authorized to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected; and shall make report to The Legislature of Puerto Rico at the beginning of each regular session of all transactions under this section.' ''

[2] The computation made in *The Coca Cola* v. *Tax Court,* with respect to the date of enforcement of the Act is erroneous, as in computing the ninety days, by excluding May 15, 1943, when the act was approved, and including the ninetieth day counted from that date, the Act did not become effective until August 14, 1943.

cases: . . . (4) Refusals to return any tax improperly paid, or paid in excess, or otherwise unlawfully, collected: . . .' ''(*)

"(*)The Legislative Assembly, upon authorizing the review of the Treasurer's decisions, adopted a procedure similar to that established in the Federal Income Tax Law. To this effect see 10 Mertens, Law of Federal Income Taxation, § 58.47, p. 350 *et seq.*, especially § 58.82, p. 361, which states that payment under protest is not necessary."

██ But the new complaint to review the decision of the Treasurer of October 20, 1941, was filed on November 17 following, that is, one year, eight months, and twenty-seven days before Act No. 169 of May 15, 1943, granting appeals against denials to refund, became effective. Under these circumstances, we must determine whether the right of appeal granted by the Act of May 15, 1943, operates retroactively to cover decisions rendered thirty days prior to the date when Act No. 169, approved May 15, 1943, went into effect.

In *The Coca Cola Co.* v. *Tax Court, supra,* the petition for refund was denied on July 23, 1943, and from that decision the taxpayer appealed on August 16 following, that is, two days after Act No. 169 of May 15, 1943, went into effect and within the thirty days granted by said Act to review the denial of a refund. But in the case at bar the decision denying the refund of the tax was rendered, as we have already stated, on October 20, 1941, and from this decision the taxpayer appealed on November 17, 1941, that is, one year, eight months, and twenty-seven days prior to the effectiveness of Act No. 169 of May 15, 1943..

In *Mason* v. *White Star Bus Line,* 53 P.R.R. 320, 323, referring to the retroactive character of procedural laws, we stated:

"The general rule invoked by the appellant to the effect that laws of a procedural character have a retroactive effect and are applicable to cases pending at the time of their enactment as well as to future ones, is well established and universally accepted. But

it is a golden rule within the field of interpretation of statutes that the paramount purpose of all rules of statutory construction is not to achieve some preconceived arbitrary objective, but to give effect to the legislative intent. *Spicer* v. *Benefit Asso. R. E.*, 90 A.L.R. 517, 522. In harmony with that principle, the general rule invoked by the appellant, like all such rules, has an exception which is that no retroactive effect is given to a statute governing procedure when it appears expressly or by necessary implication from the law itself that such was not the intention of the lawmaker. *Paulsen* v. *Reinecke*, 97 A.L.R. 1184, 1186; *Stallings* v. *Stallings*, 148 So. 687, 689.''

Applying to the present case the principles set forth in the *Mason* case, *supra,* we feel bound to conclude that the statute under discussion, notwithstanding its procedural character, is not applicable: first, because the case at bar was not pending when Act No. 169 of May 15, 1943, was approved; and, secondly, because it may be easily inferred from the statute itself that it was not the intention of the Legislature to re-establish all the cases that had been decided under the former legislation more than thirty days prior to the effective date of the Act, as such situation would bring about a chaos, since it would re-establish a great number of claims against the Treasurer which had already been foreclosed.

It is true that in this case the bank filed a notice of appeal within the thirty days after the refusal to refund, but since at that time the right of review did not exist—it was granted over one year and eight months later—said notice of appeal did not entitle petitioner to revive a case already adjudicated by a decision which was never subject to review, and which did not place petitioner in a more advantageous position than that of others who, complying with the law then in force, abided by the ruling of the Treasurer.

For the reasons stated the decision of the Tax Court should be affirmed.